IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 22-cv-01252-PAB-STV

CAMP BOW WOW FRANCHISING, INC., a Delaware Corporation,

     Plaintiff,

v.

GONE TO THE DOGS, LLC, a Texas Limited Liability Company, and
GEORGE R. AGAMEMNON,

     Defendants.

_____

**ORDER**
_____

The matter before the Court is plaintiff Camp Bow Wow Franchising, Inc.'s

Motion for Default Judgment against defendants Gone to the Dogs, LLC and George R.

Agamemnon [Docket No. 55] and Application to Confirm Arbitration Award [Docket

No. 1].

## I. BACKGROUND

### A. <u>Factual Allegations</u>[1]

Plaintiff Camp Bow Wow Franchising, Inc. ("CBW") is a Delaware corporation

with its principal place of business in Colorado.  Docket No. 1 at 3, ¶ 7.  Defendant

George R. Agamemnon is a citizen of Texas.  Docket No. 15 at 2.  Defendant Gone to

_____

[1] Because of the Clerk of Court's entry of default against the defendants, *see*
Docket No. 54, the well-pled allegations in plaintiff's Application to Confirm Arbitration
Award, Docket No. 1, are deemed admitted.  *See Olcott v. Del. Flood Co.*, 327 F.3d
1115, 1125 (10th Cir. 2003).  The following facts, unless otherwise noted, come from
the plaintiff's application.

the Dogs, LLC ("GTD") is a Texas limited liability company whose sole member is Mr.

Agamemnon.  *Id.*  CBW and the defendants are parties to written agreements that

require disputes between the parties to be arbitrated.  Docket No. 1 at 2, ¶ 1.  After a

dispute arose, CBW invoked arbitration and initiated American Arbitration Association

case number 01-21-0017-8143 against the defendants.  *Id.,* ¶ 2.  The final hearing in

the arbitration took place on April 4, 2022.  *Id.,* ¶ 3.  The arbitrator entered an award in

CBW's favor on April 7, 2022.  *Id.,* ¶ 4.  The defendants did not participate in any part of

the arbitration proceeding.  *Id.* at 2.  The arbitrator found that defendants had proper

notice of the proceedings.  *Id.,* ¶ 3.

The agreements between the two parties provide that an arbitration award may

be enforced in the state or federal courts of Colorado.  *Id.* at 2-3, ¶¶ 5-6.  CBW now

asks this Court to confirm the arbitration award.  *Id.* at 1.

### B. <u>Procedural History</u>

CBW filed its application to confirm the arbitration award on May 19, 2022.

Docket No. 1.  On July 20, 2022, the Court ordered CBW to show cause why the Court

should not dismiss the case for lack of subject matter jurisdiction as to CBW's claims

against GTD and Mr. Agamemnon based on CBW's failure to adequately allege their

citizenship.  Docket No. 12.  CBW responded and submitted records showing that Mr.

Agamemnon was the sole member of GTD, that Mr. Agamemnon listed a Texas

residence on tax documents and registered to vote in Texas, and that GTD and Mr.

Agamemnon are therefore citizens of Texas.  Docket No. 15-1 at 3; Docket No. 15-2 at

2; Docket No. 15-3 at 2.

On December 21, 2023, CBW filed a motion for default judgment against GTD

and Mr. Agamemnon.  Docket No. 51.  The Court denied this motion on April 30, 2024

for failure to comply with the process outlined in Federal Rule of Civil Procedure 55.

Docket No. 52.  CBW filed a motion for an entry of default against the defendants on

May 28, 2024, Docket No. 53, which the Clerk of Court entered the same day.  Docket

No. 54.  On June 11, 2024, CBW filed the present motion for default judgment.  Docket

No. 55.

## II. LEGAL STANDARD

In order to obtain a judgment by default, a party must follow the two-step process

described in Federal Rule of Civil Procedure 55.  First, the party must seek an entry of

default from the Clerk of Court under Rule 55(a).  Second, after default has been

entered by the Clerk, the party must seek judgment under the strictures of Rule 55(b).

*See Williams v. Smithson*, 57 F.3d 1081, 1995 WL 365988, at *1 (10th Cir. June 20,

1995) (unpublished table decision) (citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir.

1981)).

The decision to enter default judgment is "committed to the district court's sound

discretion."  *Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003)

(citation omitted).  In exercising that discretion, the Court considers that "[s]trong

policies favor resolution of disputes on their merits."  *In re Rains*, 946 F.2d 731, 732

(10th Cir. 1991) (quotation and citations omitted).  "The default judgment must normally

be viewed as available only when the adversary process has been halted because of an

essentially unresponsive party."  *Id.*  It serves to protect a plaintiff against "interminable

delay and continued uncertainty as to his rights."  *Id.* at 733.  When "ruling on a motion

for default judgment, the court may rely on detailed affidavits or documentary evidence

to determine the appropriate sum for the default judgment."  *Seme v. E&H Prof'l Sec.*

*Co., Inc.*, No. 08-cv-01569-RPM-KMT, 2010 WL 1553786, at *11 (D. Colo. Mar. 19, 2010).

A party may not simply sit out the litigation without consequence. *See Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444-45 (10th Cir. 1983) (citations omitted) ("a workable system of justice requires that litigants not be free to appear at their pleasure. We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure. The threat of judgment by default serves as an incentive to meet this standard."). One such consequence is that, upon the entry of default against a defendant, the well-pleaded allegations in the complaint are deemed admitted. *See* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2688.1 (4th ed., 2024 rev.). "Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Id.* A court need not accept conclusory allegations. *Moffett v. Halliburton Energy Servs., Inc.,* 291 F.3d 1227, 1232 (10th Cir. 2002). Although "[s]pecific facts are not necessary" in order to state a claim, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal

theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quotation and citation omitted).

In the context of an application to confirm an arbitration award, the Court reviews the well-pleaded facts of an application, rather than a complaint, and confirms that those facts meet the requirements of the Federal Arbitration Act, 9 U.S.C. § 9. *Dish Wireless L.L.C. v. Cynthia I, Inc.*, No. 23-cv-02547-GPG-NRN, 2024 WL 1931791, at *2-3 (D. Colo. Apr. 5, 2024); *Dish Network, LLC v. Cyberworks Software, Inc.*, No. 10–cv–00211–PAB, 2012 WL 2033696, at *2 (D. Colo. June 6, 2012).

"The standard of review of arbitral awards is among the narrowest known to law . . . . Once an arbitration award is entered, the finality of arbitration weighs heavily in its favor and cannot be upset except under exceptional circumstances." *White River Vill., LLP v. Fid. & Deposit Co. of Md.*, No. 08-cv-00248-REB-MEH, 2014 WL 976881, at *1 (D. Colo. Mar. 10, 2014) (internal quotation marks and citations omitted).

## III.  ANALYSIS

### A.  <u>Jurisdiction</u>

Before addressing the merits of plaintiff's motion for default judgment, the Court must determine whether it has subject matter jurisdiction over the case and personal jurisdiction over GTD and Mr. Agamemnon.  *See Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997) (holding that "a district court must determine whether it has jurisdiction over the defendant before entering judgment by default against a party who has not appeared in the case").

#### 1.  *Subject Matter Jurisdiction*

The Court finds that it has subject matter jurisdiction over CBW's claims pursuant to 28 U.S.C. § 1332.  In its initial application, CBW stated that it is a Delaware

corporation with its principal place of business in Colorado.  Docket No. 1 at 3, ¶ 7.

CBW's response to the Court's Order to Show Cause demonstrated that Mr.

Agamemnon is a citizen of Texas.  Docket No. 15-2 at 2; Docket No. 15-3 at 2.  CBW

has also shown that Mr. Agamemnon is the sole member of GTD.  Docket No. 15-1 at

3.  As such, GTD is also a citizen of Texas.  *See Siloam Springs Hotel, LLC v. Century

Sur. Co.*, 781 F.3d 1233, 1237–38 (10th Cir. 2015) ("in determining the citizenship of an

unincorporated association for purposes of diversity, federal courts must include all the

entities' members").  CBW seeks a sum certain of $316,745.28 in damages, as well as

non-monetary declaratory and injunctive relief, which is more than the $75,000

jurisdictional amount.  28 U.S.C. § 1332(a)(1) ("district courts shall have original

jurisdiction of all civil actions where the matter in controversy exceeds the sum or value

of $75,000, exclusive of interest and costs, and is between . . . citizens of different

States.").

## 2. *Personal Jurisdiction*

Plaintiff bears the burden of establishing personal jurisdiction.  *Rambo v. Am. S.

Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988); *XMission, L.C. v. Fluent LLC*, 955 F.3d

833, 839 (10th Cir. 2020).  Plaintiff can satisfy its burden by making a *prima facie*

showing.  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir.

2008).  A court will accept the well-pled allegations of the complaint as true in

determining whether plaintiff has made a *prima facie* showing that personal jurisdiction

exists.  *See AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir.

2008).  If the presence or absence of personal jurisdiction can be established by

reference to the complaint, the court need not look further.  *Id.*  The plaintiff, however,

may also make this *prima facie* showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendant.  *Id.*

  "In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process."  *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)).  The Colorado long-arm statute, Colo. Rev. Stat. § 13-1-124, has been construed to extend jurisdiction to the full extent permitted by the Constitution, so the jurisdictional analysis here reduces to a single inquiry of whether jurisdiction offends due process.  *See Dudnikov*, 514 F.3d at 1070; *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005).  Personal jurisdiction comports with due process where a defendant has minimum contacts with the forum state and where those contacts are such that assuming jurisdiction does not offend "traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Minimum contacts may be established under the doctrines of general jurisdiction or specific jurisdiction.  *Howarth v. TCER, LLC*, 20-cv-03230-PAB-KMT, 2021 WL 4775270, at *2 (D. Colo. Oct. 13, 2021).

  Furthermore, proper service is a jurisdictional prerequisite to litigation.  *Jenkins v. City of Topeka*, 136 F.3d 1274, 1275 (10th Cir. 1998) ("Effectuation of service is a precondition to suit.").  Without proper service, the Court lacks personal jurisdiction over a defendant.  *Okla. Radio Assocs. v. Fed. Deposit Ins. Corp.*, 969 F.2d 940, 943 (10th Cir. 1992).

### a.    Service of Process

The Court first considers whether CBW properly served the defendants.  The

Federal Rules of Civil Procedure provide that "an individual . . . may be served in a

judicial district of the United States by . . . following state law for serving a summons in

an action brought in courts of general jurisdiction in the state where the district court is

located or where service is made."  Fed. R. Civ. P. 4(e)(1).[2]  CBW asserts that it

complied with Rule 4(e)(1) by serving GTD and Mr. Agamemnon in Texas pursuant to

Texas law.  Docket No. 55 at 2, ¶ 2.  Specifically, the assigned magistrate judge

authorized CBW to serve GTD and Mr. Agamemnon with service by publication, as

allowed by Texas Rule of Civil Procedure 109.  Docket No. 45 at 6.  Texas Rule 109

states:

> When a party to a suit, his agent or attorney, shall make oath that the residence
> of any party defendant is unknown to affiant, and to such party when the affidavit
> is made by his agent or attorney, or that such defendant is a transient person,
> and that after due diligence such party and the affiant have been unable to locate
> the whereabouts of such defendant, or that such defendant is absent from or is a
> nonresident of the State, and that the party applying for the citation has
> attempted to obtain personal service of nonresident notice as provided for in Rule
> 108, but has been unable to do so, the clerk shall issue citation for such
> defendant for service by publication.  In such cases it shall be the duty of the
> court trying the case to inquire into the sufficiency of the diligence exercised in
> attempting to ascertain the residence or whereabouts of the defendant or to
> obtain service of nonresident notice, as the case may be, before granting any
> judgment on such service.

---

[2] The Federal Rules also provide for service to limited liability companies such as
GTD.  *See* Fed. R. Civ. P 4(h)(1); *Warming Trends, LLC v. Flame DesignZ, LLC*, No.
22-cv-00252-PAB-STV, 2023 WL 196288, at *3 (D. Colo. Jan. 17, 2023) (collecting
cases).  But since Mr. Agamemnon is the sole member and registered agent of GTD,
Docket No. 15 at 2, and GTD does not appear to have a separate address, the sole
question is whether individual service has been effectuated.

Tex. R. Civ. P. 109. While federal law does not prohibit service by publication as a last resort in the case of a missing party, *see Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317 (1950), Texas law imposes several exacting requirements with which CBW must comply in pursuing this method.

### i. Rule 109's Diligence Requirement

In order to prove the necessity of proceeding with service by publication, CBW must show that it exercised due diligence in attempting to locate and serve Mr. Agamemnon. *See Compass Bank v. Robinson*, 2015 WL 13119412, at *1 (S.D. Tex. Aug. 18, 2015). "A diligent search must include inquires that someone who really wants to find the defendant would make, and diligence is measured not by the quantity of the search but by its quality." *In re E.R.*, 385 S.W.3d 552, 565 (Tex. 2012) (footnote omitted). Such stringent requirements are in place because Texas law disfavors alternative means of service, such as publication, that are unlikely to actually provide the defendant with notice of suit. *Booth v. Martinez*, 2007 WL 2086659, at *1 (W.D. Tex. July 18, 2007). A diligent inquiry goes beyond merely checking a computerized database. *In re E.R.*, 385 S.W.3d at 564 (citing *In re Dar. C.*, 957 N.E.2d 898, 912 (Ill. 2011)). Visiting a single residence located through a database and giving up when the defendant is found not to live there is also insufficient. *See Sun Life Assurance Co. of Canada v. McKinney*, 2022 WL 256504, at *3 (N.D. Tex. Jan. 27, 2022). Even checking multiple public and private databases and visiting possible residences can be insufficient if the searcher failed to make obvious inquiries such as talking to family members or mailing notice to possible addresses. *In re E.R.*, 385 S.W.3d at 564-65 (citing *In the Interest of S.P.*, 672 N.W.2d 842, 848 (Iowa 2003)). Courts have suggested that more aggressive search efforts, such as hiring a private investigator,

may be indicative of reasonable diligence.  *Deutsche Bank Nat'l Tr. Co. v. Navarro*,

2019 WL 13191726, at *2 (S.D. Tex. May 2, 2019); *Booth*, 2007 WL 2086659, at *1.

 The Court is satisfied that CBW exercised the due diligence required by Texas

Rule 109.  CBW spent over a year attempting to find and serve Mr. Agamemnon.

Docket No. 45 at 6.  A CBW employee, Gregory Jolly, took several steps to locate Mr.

Agamemnon.  Docket No. 35-1 at 3-6.  Mr. Jolly queried eleven different databases,

conducted Google searches, and searched several social media platforms in an effort to

find information about Mr. Agamemnon.  *Id.* at 4-6.  Mr. Jolly also called the two phone

numbers that Mr. Agamemnon had previously provided to CBW.  *Id.* at 6.  Finally, Mr.

Jolly spoke to the former manager of the CBW location that Mr. Agamemnon had

franchised.  *Id.*

 CBW sent process servers to six Texas addresses and a South Carolina

address.  Docket Nos. 35-3, 35-4, 35-5, 43-1.  At one address, a man confirmed that

Mr. Agamemnon had been a prior tenant.  Docket No. 35-3 at 2.  At another, a woman

confirmed that she had bought the property from Mr. Agamemnon eighteen years prior.

*Id.* at 3.  At a third address, the process server found Mr. Agamemnon's niece, who said

that he had never lived at the address and that she had not spoken to him in years.

Docket No. 35-5 at 2.

 Perhaps the most important location visited was an address on La Vista Drive in

Dallas, Texas.  The assigned magistrate judge, in denying an earlier motion for service

by publication, had informed CBW of a recent court case in which Mr. Agamemnon had

been served at the La Vista Drive address.  Docket No. 37 at 5.  CBW then requested a

summons and sent a process server to the address.  Docket Nos. 38, 39, 43-1.  A man

who answered the door told the process server that he was not Mr. Agamemnon and
that no one with that name lived at the property.  Docket No. 43-1 at 2-3.  The process
server reviewed a picture of Mr. Agamemnon and confirmed that he was not the man
who answered the door.  Docket No. 43-3 at 3.  The process server also spoke to a
neighbor on La Vista Drive, who did not know of anyone named George living on the
street.  *Id.*  Finally, CBW's attorney Joe Hampton spoke to the counsel of record in the
case where Mr. Agamemnon had apparently recently been served; that attorney told Mr.
Hampton that he did not know of any information about Mr. Agamemnon's whereabouts.
*Id.*

CBW's efforts have well exceeded those which were found wanting in cases
such as *In re E.R.* and *Sun Life*.  CBW did not confine its search only to databases, but
sent process servers to multiple locations.  Unlike the plaintiff in *Sun Life*, CBW kept
trying to find Mr. Agamemnon even after early efforts failed.  CBW spoke both to a
family member and to a former co-worker of Mr. Agamemnon.  For the La Vista Drive
address – seemingly the most promising lead – CBW sent a process server to visit the
home.  Docket No. 43-1.  When the person at the address denied being or knowing Mr.
Agamemnon, the process server confirmed the person's denial by reviewing a photo of
Mr. Agamemnon and by speaking to a neighbor.  Docket No. 43-3 at 2-3.  In short,
CBW has acted with the diligence of "someone who really wants to find the defendant."
*In re E.R.*, 385 S.W.3d at 565.  It was therefore acceptable to turn to the "last resort" of
service by publication.  *See Compass Bank*, 2015 WL 13119412, at *1.

### ii. Rule 109's Procedural Requirements

Having confirmed that CBW searched with the diligence required to justify
service by publication under Texas Rule of Civil Procedure 109, the Court must now

determine whether CBW complied with the procedural requirements associated with this method of service.

First, the structure and content of the notice must comply with Texas Rule of Civil Procedure 114. Rule 114 states that the notice shall 1) be styled "The State of Texas"; 2) be directed to the defendants by name; 3) contain the names of the parties; 4) contain a brief statement of the nature of the suit; 5) explain the property involved and the interest of the defendants; and 6) give the defendants forty-two days from the first date of publication to respond. Tex. R. Civ. P 114. A review of CBW's notice, Docket Nos. 50-1, 50-2, 50-3, confirms that CBW complied with Rule 114.

Second, the method of publication must comply with Texas Rule of Civil Procedure 116. The notice must be published in a newspaper and on a website for the Texas courts system. Tex. R. Civ. P. 116(b)(1). For the newspaper publication, the citation must be served by a sheriff, constable, or the clerk of the court in which the case is pending, must be published once each week for four consecutive weeks, and the first publication must be at least 28 days before the return is filed. Tex. R. Civ. P. 116(c)(1)-(2). In suits not involving land or real estate, the citation must be published in a newspaper in the county where the suit is pending. Tex. R. Civ. P. 116(c)(3). CBW complied with each of these requirements. The Clerk of Court of the District of Colorado served the citation. Docket No. 49. The Denver Post, a newspaper in the City and County of Denver, Colorado, ran the citation on October 12, October 19, October 26, and November 2, 2023. Docket No. 50-1. The Daily Commercial Record, a newspaper in Dallas County, Texas, ran the citation on October 16, October 23, October 30, and November 6, 2023. Docket No. 50-2. CBW filed the return on

November 21, 2023, more than twenty-eight days after the first date of publication.  *See*
Docket No. 50.  By publishing in the Denver Post, CBW complied with the requirement
to publish the notice in the county in which the suit is pending.

For the publication on the Texas courts website, a citation must be served by the
clerk of the court in which the case is pending, the citation must be published for at least
twenty-eight days before the return is filed, and it must be published in accordance with
any other guidelines established by the Office of Court Administration.  Tex. R. Civ. P.
116(d).  The Clerk of Court of the District of Colorado served the citation.  Docket No.
49.  The citation ran on the website for twenty-eight days from October 13 to November
10, 2023.  Docket No. 50-3.  The return was filed after the twenty-eight days passed.
*See* Docket No. 50.

Third, the return of the citation must comply with Texas Rule of Civil Procedure
117.  For the newspaper publication, the return must state how the citation was
published, specify the dates of publication, be signed by the officer who served the
citation, and be accompanied by an image of the publication.  Tex. R. Civ. P. 117(a).  A
review of CBW's notice, Docket Nos. 50-1, 50-2, confirms that CBW complied with Rule
117(a).  For the website publication, the return must specify the dates of publication and
be generated by the Office of Court Administration.  Tex. R. Civ. P. 117(b).  A review of
CBW's notice, Docket No. 50-3, confirms that CBW complied with Rule 117(b).
Therefore, CBW has complied with all of the procedural requirements for serving Mr.
Agamemnon notice via publication.

### iii. Whether Rule 244 Requires Appointment of an Attorney

Texas Rule of Civil Procedure 244 states that, when service has been made by publication under Texas Rule 109 and the missing party still has not responded or appeared, the Court shall appoint an attorney to defend the suit on the behalf of the missing defendant.  The Court must determine whether it is bound to follow this state rule.

Federal courts within each of the four federal judicial districts in Texas have considered this issue without reaching a consensus.  Some courts have, without discussion, stated that federal courts must comply with Rule 244.  *See, e.g.*, *Deutsche Bank Nat'l Tr. Co. v. Navarro*, 2019 WL 13191611, at *1 (S.D. Tex. May 30, 2019).  Other courts have, also with limited discussion, either decided or suggested that Rule 244 does not apply.  *CAN Capital Asset Servicing, Inc. v. Neo Tech Wireless, Inc.*, 2022 WL 3904672, at *1 (E.D. Tex. Feb. 11, 2022); *Ocwen Loan Servicing LLC v. Lane*, 2015 WL 7301182, at *1 (W.D. Tex. Nov. 18, 2015).  Of the courts to consider the issue in greater depth, one has applied an *Erie* doctrine analysis and determined that Rule 244 applies in federal cases, *see Freedom Mortgage Corp. v. Porcher*, 2023 WL 3874332, at *2-6 (W.D. Tex. June 6, 2023), while another has decided that Rule 244 does not apply to federal cases because it is not the "state law for serving a summons," but rather merely a post-service requirement that falls outside of the scope of Federal Rule of Civil Procedure 4(e).  *See Bank v. Hill*, 2023 WL 5007409, at *1-3 (W.D. Tex. Aug. 6, 2023).

The Court finds the last approach to be the most persuasive.  Federal Rule of Civil Procedure 4(e) provides that an individual "may be served . . . by . . . following

14

state law for serving a summons."  Fed. R. Civ. P. 4(e)(1).  What Texas Rule of Civil Procedure 244 provides for – appointment of an attorney to represent a party who has not appeared after being served by publication – is something that happens after service is complete.  Therefore, the Court finds Texas Rule 244 to be outside the scope of Federal Rule 4(e).

Even if the Court engages in an *Erie* doctrine analysis, it agrees with the holding in *Bank* that the state law does not apply because there is a "direct collision" between Federal Rule of Civil Procedure 55(a) and Texas Rule 244.  *Bank*, 2023 WL 5007409, at *2.  Both rules address the next step for a court to take once a party has failed to appear.  *Id.*  Federal Rule 55(a), unlike Texas Rule 244, does not provide for the appointment of an attorney.  *Id.*  These differences cannot be reconciled and thus the federal rule controls.  *Id.* at *2-3.

### b.    General Jurisdiction

General jurisdiction extends to "any and all claims" brought against a defendant, including claims that have no relation to the forum state.  *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (citation omitted).  A court may exercise general jurisdiction only when a defendant is "essentially at home" in the state.  *Id.*  For corporations, "the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'"  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citation omitted); *see also Ford Motor Co.*, 592 U.S. at 358-59.  "Courts have held that *Daimler* applies with equal force to limited liability companies."  *Bliss v. Change Healthcare Operations LLC*, 2021 WL 706770, at *1 (W.D. Okla. Feb. 23, 2021) (collecting cases).

CBW states that GTD and Mr. Agamemnon are citizens of Texas.  Docket No. 15 at 2.  CBW makes no argument that the defendants are otherwise "at home" in Colorado.  Accordingly, the Court finds that the defendants are not subject to general jurisdiction in Colorado.

### c.    Specific Jurisdiction

Specific jurisdiction is present if the lawsuit "aris[es] out of or relat[es] to the defendant's contacts with the forum."  *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal*., 582 U.S. 255, 262 (2017).  That is, a "plaintiff's injury must 'arise out of or relate to' the defendant's forum contacts."  *Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1284 (10th Cir. 2020) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985)).  In other words, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"  *Bristol-Myers*, 582 U.S. at 262 (quoting *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919 (2011)).

The specific jurisdiction analysis is two-fold.  First, a court must determine whether a defendant has such minimum contacts with Colorado that the defendant "should reasonably anticipate being haled into court" here.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Within this inquiry, the court must determine whether the defendant purposefully directed its activities at residents of the forum, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985), and whether plaintiff's claim arises out of or results from "actions by . . . defendant . . . that create a substantial connection with the forum State."  *Asahi Metal Indus. Co. v. Sup. Ct. of Cal*., 480 U.S. 102, 109 (1987) (internal quotations omitted).  "The contacts must be the

defendant's own choice and not 'random, isolated, or fortuitous.'"  *Ford Motor Co*., 592
U.S. at 359 (quoting *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 774 (1984)).
"They must show that the defendant deliberately 'reached out beyond' its home – by, for
example, 'exploi[ting] a market' in the forum State or entering a contractual relationship
centered there."  *Id*. (citation omitted).  Second, if a defendant's actions create sufficient
minimum contacts, the court must consider whether the exercise of personal jurisdiction
over the defendant offends "traditional notions of fair play and substantial justice."
*Asahi*, 480 U.S. at 105.  The court considers several factors as part of this analysis,
including: (1) the burden on the defendant; (2) the forum state's interest in adjudicating
the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the
interstate judicial system's interest in obtaining the most efficient resolution of
controversies; and (5) the shared interest of the states in furthering fundamental
substantive social policies.  *Burger King*, 471 U.S. at 477.

      The Court finds that defendants have sufficient minimum contacts with Colorado
to support personal jurisdiction over them in this dispute.  A "contract between an out-of-
state party and a resident of the forum state cannot, standing alone, establish sufficient
minimum contacts with the forum."  *Benton v. Cameco Corp.*, 375 F.3d 1070, 1077
(10th Cir. 2004) (citing *Burger King*, 471 U.S. at 473).  Rather, "[i]n a contract case,
relevant factors for assessing minimum contacts include prior negotiations and
contemplated future consequences, along with the terms of the contract and the parties'
actual course of dealing."  *Id.* (quotation and citation omitted).  "That is, the contract
relied upon to establish minimum contacts must have a 'substantial connection' with the
forum state."  *TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd.*, 488 F.3d 1282, 1288

(10th Cir. 2007) (quoting *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223 (1957)).  Here,

the defendants entered into a contract in Colorado.  Docket No. 1 at 2-3, ¶¶ 5-6.  GTD

and Mr. Agamemnon signed a franchise agreement, which was the main agreement

between the parties, as well as at least twelve addendums.  Docket No. 1-2 at 62, 63,

66, 69, 71, 77, 85, 88, 95, 114, 115, 123, 132.  Although CBW provides no details as to

the parties' prior negotiations and course of conduct, the terms of the contracts in

dispute and the contemplated future consequences of failures to perform these

contracts establish minimum contacts with Colorado.

　　The franchise agreement and guaranty agreement dictate that they shall be

governed by the law of the State of Colorado.  Docket No. 1 at 2-3, ¶¶ 5-6; *see also*

Docket No. 1-2 at 56, ¶¶ 19.4-19.5; Docket No. 1-3 at 2, ¶ 13.  The relevant portions of

the agreements state that "[t]he parties expressly consent to personal jurisdiction and

venue in the State of Colorado and agree that such courts shall have exclusive

jurisdiction over any such issues not subject to arbitration and that Colorado law shall

apply."  Docket No. 1-2 at 56, ¶ 19.4.  Further, "[t]he award of the arbitrator will be final

and binding on the parties and may be enforced by judgment or order of the state and

federal courts located in Denver, Colorado."  *Id.,* ¶ 19.5.

　　Other federal courts have found contractual language agreeing to submit

disputes to a particular forum dispositive of the issue of personal jurisdiction.  *See*

*Rescuecom Corp. v. Chumley*, 522 F. Supp. 2d 429, 443 (N.D.N.Y. 2007) ("such

conferrals of exclusive jurisdiction have been specifically recognized as including

*consents to personal jurisdiction*.") (collecting cases); *Suntrust Bank v. G.R. Auto*

*Supply, Inc.*, 2007 WL 2226058, at *1 (N.D. Ga. July 30, 2007) ("The Court further finds

that the parties consented to personal jurisdiction in this court by agreeing in the loan
contract to have all disputes heard in Georgia.").

Even if the forum selection clauses are not determinative of whether the Court
has personal jurisdiction over the defendants, each of the contracts between plaintiff
and GTD contemplates a continuing relationship with Colorado through ongoing
obligations to a Colorado resident.  *See* Docket No. 1-2 at 11, ¶ 2.1 ("This Agreement
and the License granted shall commence as of the Effective Date and payment of the
Initial Franchise Fee by Franchisee.  This Agreement and the License granted shall
continue for a period of 10 years, beginning from the date that Franchisee's Camp Site
opens (the "Term"), subject to termination pursuant to the provisions of this
Agreement."); *Burger King Corp.*, 471 U.S. at 480 (by entering into a contractual
relationship that envisioned "continuing and wide-reaching contacts" with the plaintiffs in
the forum state, defendant's relationship to the forum "can in no sense be viewed as
'random,' 'fortuitous,' or 'attenuated.'" (citation omitted)).  By entering into contracts
governed by Colorado law, defendants here have "purposefully availed [themselves] of
the benefits and protections of [Colorado's] laws."  *Id.* at 482.  Moreover, by agreeing to
a contract that would run from 2015 until at least 2025, the defendants necessarily
understood that they were creating ongoing obligations in the forum state.  *See Mellon
Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (citation
omitted) ("[B]y asking Mellon to lend money and offering to guaranty that debt, the
defendants deliberately reached out beyond one state and created continuing
relationships and obligations with citizens of another state.  Mellon initially granted the
three loans between August 1987 and November 1988 with payments to continue

through November 1989 . . . .  During this time, the defendants remained liable as
guarantors and sureties if the principal obligor ever failed to pay.  The actions of the
defendants, therefore, knowingly created continuing obligations with a citizen of
Pennsylvania." (quotation and alterations omitted)).  Finally, by agreeing to jurisdiction
in Colorado, defendants contemplated a future consequence of being brought to court in
Colorado if they failed to perform their obligations under the contract.  *Benton*, 375 F.3d
at 1077.  Considering these contacts as a whole, the Court finds that the defendants
have sufficient minimum contacts through their ongoing contractual relationships with
CBW to support personal jurisdiction over both of them.

Regarding traditional notions of fair play and substantial justice, the Court finds
that, under the relevant factors, personal jurisdiction over defendants does not offend
traditional notions of fair play and substantial justice.  First, "it is only in highly unusual
cases that inconvenience will rise to a level of constitutional concern."  *Peay*, 205 F.3d
at 1212-13 (citation and quotations omitted).  The Court does not find this to be a case
where the burden on defendants rises to a constitutional concern.  Second, "[s]tates
have an important interest in providing a forum in which their residents can seek redress
for injuries caused by out-of-state actors."  *OMI Holdings, Inc. v. Royal Ins. Co. of
Canada,* 149 F.3d 1086, 1096 (10th Cir. 1998).  The third factor "hinges on whether the
[p]laintiff may receive convenient and effective relief in another forum," *Benton,* 375
F.3d at 1079 (citation omitted), and the fourth factor asks "whether the forum state is the
most efficient place to litigate the dispute."  *Id.* at 1080 (citation omitted).  In this case,
given the forum selection clauses in the disputed contracts, it is unclear whether CBW
could receive effective relief in another state.  Regardless, the Court finds that Colorado

is the most efficient forum to litigate this dispute because CBW is a citizen of Colorado,

the alleged injury was directed at CBW in Colorado, and defendants are out-of-state

and have not responded to the complaint or motion for default judgment.  The fifth factor

"focuses on whether the exercise of personal jurisdiction by [the forum] affects the

substantive social policy interests of other states or foreign nations."  *Id.* (citation

omitted).  The franchise agreement and guaranty state that they are governed by

Colorado law.  *See* Docket No. 1-2 at 56, ¶¶ 19.4-19.5; Docket No. 1-3 at 2, ¶ 13.

Accordingly, the Court finds that exercising personal jurisdiction over defendants does

not offend traditional notions of fair play and substantial justice, and that the Court has

specific personal jurisdiction over each of them.

### B.  Merits of the Application

The well-pleaded facts of the application to confirm the arbitration award meet

the requirements of the Federal Arbitration Act, 9 U.S.C. §§ 9-11.  Under § 9, CBW

must show that 1) the parties agreed to binding arbitration; 2) the petition to confirm the

award was brought within one year of the award; 3) notice of the petition was served on

the adverse party; and 4) the petition was brought in the appropriate court.  *Dish

Network, L.L.C. v. Open Orbit Corp.*, No. 16-cv-02083-CBS, 2017 WL 11488618, at *5

(D. Colo. May 25, 2017), *report and recommendation adopted*, 2017 WL 11488617 (D.

Colo. June 28, 2017).  If those elements are met and there are no grounds for vacatur,

modification, or correction, as prescribed by 9 U.S.C. §§ 10-11, the Court must enter

judgment confirming the award.  *Id.*

The first element has been met because GTD and Mr. Agamemnon entered into

a guaranty agreement with CBW on January 30, 2015 and a franchise agreement with

CBW on February 4, 2015, both of which contained clauses providing for binding

arbitration.  Docket No. 1-2 at 62; Docket No. 1-3 at 3.  The second element has been

met because CBW filed its application to confirm the award on May 19, 2022, less than

two months after the final award and well within the one-year window.  Docket No. 1.

The third element has been met because CBW notified GTD and Mr. Agamemnon of

the award by serving them with service by publication.  Docket No. 50.  The fourth

element has been met because CBW filed the petition in the District of Colorado, and

the franchise and guaranty agreements provide for the enforcement of arbitral awards in

the state or federal courts of Colorado, making this Court an appropriate venue.  Docket

No. 1-2 at 56, ¶ 19.5 (the venue provision in the franchise agreement); Docket No. 1-3

at 2, ¶ 13 (the provision in the guaranty agreement referring back to Section 19 of the

franchise agreement).

The Court finds no grounds for vacating, modifying or correcting the award.  The

Court can only vacate an award when:

> [T]he award was procured by corruption, fraud, or undue means; . . . there was
> evident partiality or corruption in the arbitrators, or either of them; . . . the
> arbitrators were guilty of misconduct in refusing to postpone the hearing, upon
> sufficient cause shown, or in refusing to hear evidence pertinent and material to
> the controversy; or of any other misbehavior by which the rights of any party
> have been prejudiced; or . . . the arbitrators exceeded their powers, or so
> imperfectly executed them that a mutual, final, and definite award upon the
> subject matter submitted was not made.

9 U.S.C. § 10(a)(1)-(4).  The Court can only modify an award when:

> [T]here was an evident material miscalculation of figures or an evident material
> mistake in the description of any person, thing, or property referred to in the
> award; . . . the arbitrators have awarded upon a matter not submitted to them,
> unless it is a matter not affecting the merits of the decision upon the matter
> submitted; [or] . . . the award is imperfect in matter of form not affecting the
> merits of the controversy.

9 U.S.C. § 11(a)-(c).  Having reviewed the entire case file, including the application and

its exhibits, the final arbitration award, and CBW's various motions, the Court finds

nothing in the record that suggests any basis to vacate or modify the award.  Therefore,

the Court will grant CBW's motion for default judgment and will award CBW damages,

fees, and injunctive relief.

## IV.  CONCLUSION

It is therefore

**ORDERED** that plaintiff's Motion for Default Judgment [Docket No. 55] is

**GRANTED**.  It is further

**ORDERED** that plaintiff's Application to Confirm Arbitration Award [Docket No. 1]

is **GRANTED**.  It is further

**ORDERED AND DECLARED** that the parties' Franchise Agreement was validly

terminated effective October 20, 2021.  It is further

**ORDERED** that a permanent injunction is entered against defendants Gone to

the Dogs, LLC and George R. Agamemnon and that the defendants shall:

    a.  Immediately discontinue use of all CBW trademarks, signs, structures, forms of advertising, telephone listings, facsimile numbers, e-mail addresses, operating manuals, and all materials associated with CBW, and return such materials and products to CBW;

    b.  Immediately return to CBW all materials, including operating manuals, customer lists, records, files, instructions, brochures, advertising materials, agreements, confidential information, trade secrets, and any other materials provided by CBW to Franchisee, or which are CBW's property;

    c.  Immediately transfer all telephone numbers, facsimile numbers and Internet addresses used by defendants in the business of GTD to CBW;

    d.  Refrain from using CBW's Confidential Information and trade secrets;

    e.  Maintain as absolutely confidential CBW's Confidential Information and trade secrets;

    f.  Immediately adopt and implement procedures to prevent the unauthorized disclosure or use of CBW's Confidential Information and trade secrets, as well as prevent violation of the NDA, by Franchisee's managers and employees; and

    g.  Refrain from having any direct or indirect interest in a competing business for a period of two years.  It is further

**ORDERED** that judgment shall enter in favor of Camp Bow Wow Franchising, Inc. and against defendants Gone to the Dogs, LLC and George R. Agamemnon pursuant to the Arbitration Award [Docket No. 1-1] in the total amount of $316,745.28, consisting of $296,944.05 in damages and $19,801.23 in attorneys' fees, recoverable costs, and arbitration expenses.

DATED February 18, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge